**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

      v.                                                1:26-CR-232 (AJB)

WILLIAM HUBER,

                    Defendant.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OFFICE OF THE FEDERAL PUBLIC DEFENDER<br>54 State Street, Suite 310<br>Albany, New York 12207<br>Attorneys for defendant | ERIC K. SCHILLINGER, ESQ.<br>VALERIE A. GOTLIB, ESQ. |
| DOJ-U.S. ATTORNEY'S OFFICE<br>445 Broadway<br>Room 218<br>Albany, New York 12207 | JOSEPH HARTUNIAN, ESQ. |

**PAUL J. EVANGELISTA**
**United States Magistrate Judge**

## DECISION and ORDER

Defendant William Huber is charged by indictment with two offenses arising from his alleged construction and attempted use of an explosive device to destroy a vehicle associated with an alleged romantic rival. *See* Dkt. No. 1. The matter is before the Court on the Government's motion for pretrial detention. After considering the Pretrial Services Report, the parties' submissions, and the arguments presented at the detention hearing, the Court

finds that Defendant has satisfied his limited burden of production under 18 U.S.C. § 3142(e), but that the Government has not established by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. Accordingly, the Government's motion is denied. The Court announced its decision in open court at the continued detention hearing held on August 5, 2026.  A copy of the conditions of release is filed at Dkt. No. 26.

## I.      BACKGROUND

### 1.      State Court Proceedings

On March 1, 2021, investigators were called to the scene of an apparent attempted vehicle bombing.  Within eight days, investigators identified Defendant as a suspect. He was arrested and charged in state court with attempted murder in the second degree and criminal possession of a weapon in the first degree.  *See* Dkt. No. 20-1 at 3.  On March 11, 2021, Defendant appeared in local court, waived a preliminary hearing, and consented to the matter being transferred to Rensselaer County Court. *See id*.  The following day, the County Court granted Defendant's bail application and released him on a secured bond, required him to surrender his passport, and placed him on electronic monitoring by the Rensselaer County Probation Department. *See id*.

More than a year later, Defendant received a plea offer under which he would plead guilty to criminal possession of a weapon and receive a twelve-year determinate sentence, followed by five years of post-release supervision.

*See id*. at 4.  Defendant rejected the offer and remained on release without incident.

On April 17, 2025, the County Court modified Defendant's release conditions by removing electronic monitoring and releasing him on his own recognizance. *See* Dkt. No. 20-2. On November 17, 2025, the County Court dismissed the state charges on speedy-trial grounds. *See* Dkt. No. 20-1.

### 2.   **Federal Proceedings**

On July 9, 2026, a grand jury sitting in the Northern District of New York returned a two-count Indictment arising from the same underlying conduct that formed the basis of the dismissed state charges.  Count One charges Defendant with the use of explosives to commit a felony, in violation of 26 U.S.C. § 5861(f), all in violation of 18 U.S.C. § 844(h)(1).  Count Two charges Defendant with malicious use of explosives to destroy a vehicle, in violation of 18 U.S.C. § 844(i). *See* Indictment, Dkt. No. 1.

On July 15, 2026, Defendant was arrested and appeared before this Court for his initial appearance.  *See* Text Min. Entry dated Jul. 15,2 026.  The Government moved for detention on the ground that Defendant posed a danger to the community.[1]  Defendant did not contest temporary detention at that time, and the Court reserved to him the right to seek a detention hearing at a future

---

[1] The Government does not contend that Defendant presents a risk of nonappearance. In any event, Defendant's community ties, prior compliance, and record of remaining in the area during the state prosecution establish that any such risk can be reasonably addressed through conditions.

date.  At Defendant's request, the Court scheduled a detention hearing for July 28, 2026. *See* Dkt. No. 17.

Before the hearing, counsel for both parties submitted memoranda addressing detention, and Pretrial Services prepared a report for the Court and counsel. *See* Dkt. Nos. 14, 20, 21.

Both parties appeared and were prepared to proceed on July 28, 2026. The Government proceeded by proffer. It described the nature and circumstances of the charged offense, summarized the investigation, and addressed the weight of the evidence.  In particular, the Government relied on surveillance evidence, records reflecting Defendant's alleged purchase of components similar to those used in the device, cellphone and location evidence, Defendant's statements to law enforcement, and laboratory and forensic analysis. *See generally* Dkt. No. 25.

The Government argued that the alleged conduct reflected substantial planning, preparation, and sophistication, and that Defendant continued to pose a danger because the interpersonal circumstances that allegedly motivated the offense had not materially changed.  During its proffer, the Government displayed a PowerPoint presentation, which was admitted without objection as court exhibit one for purposes of the detention hearing.

The defense then proceeded by proffer.  Counsel argued that detention was unnecessary because a combination of stringent release conditions could reasonably assure the safety of any other person and the community.  Although

defense counsel disputed aspects of the Government's characterization of the evidence, the defense principally relied on the more than five years that had elapsed since the alleged conduct.  Counsel emphasized that during that period, Defendant remained steadily employed, maintained stable housing and family support, complied with state supervision, committed no new criminal offenses, and engaged in no further violent or threatening conduct.  The defense also cited Defendant's military service, his willingness to participate in mental health treatment, and his agreement to abide by restrictive conditions of release. *See generally* Dkt. No. 25.

The defense proposed conditions including home detention, GPS monitoring, third-party custodians, restrictions on firearms and other dangerous weapons, geographic and no-contact restrictions, treatment, and supervision by Pretrial Services. Counsel argued that Defendant's sustained compliance during the state proceedings provided a reliable basis to conclude both that any risk could be reasonably managed and that Defendant would comply with the conditions imposed.

## II.    Applicable Law

### A.    Detention Standard

The Bail Reform Act requires the pretrial release of a defendant subject to the least restrictive condition or combination of conditions that will reasonably assure the defendant's appearance and the safety of any other person and the community. *See* 18 U.S.C. § 3142(b), (c).  A defendant may be detained pending trial only if the Court

finds that no condition or combination of conditions will reasonably assure those statutory interests. *See* 18 U.S.C. § 3142(e).

A detention hearing may be held only in the circumstances authorized by 18 U.S.C. § 3142(f), including when the case involves an offense enumerated in § 3142(f)(1). *See United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). "Once the government has demonstrated to the District Court that it is entitled to seek pretrial detention under § 3142(f), a judicial officer must promptly hold a hearing." *United States v. Terrance*, No. 8:24-CR-456 (MAD), 2025 WL 782340, at 1 (N.D.N.Y. Jan. 10, 2025) (internal citations omitted).

At the hearing, "[t]he government bears the burden of proof to establish risk of flight and/or danger, and that no conditions can reasonably protect against those risks." *United States v. Wiggins*, No. 25-MR-06198-MAV, 2025 WL 3703584, at 1 (W.D.N.Y. Dec. 22, 2025). It must establish risk of nonappearance by a preponderance of the evidence and dangerousness by clear and convincing evidence. *See United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) (discussing risk of nonappearance); *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985) (discussing dangerousness). A defendant awaiting trial must be released unless the Government establishes that no condition or combination of conditions will reasonably assure the defendant's appearance and the safety of any other person and the community. *See United States v. Berrios-Berrios*, 791 F.2d 246, 249 (2d Cir. 1986) (explaining that the Bail Reform Act codified "traditional presumption favoring pretrial release for the majority of federal defendants") (quotation omitted).

The statutory factors that a court must consider in making a detention decision are as follows:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves an  . . . explosive or destructive device;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including—
(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

### B.    Rebuttable Presumption

Certain offenses identified in 18 U.S.C. § 3142(e)(3) trigger a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendant's appearance and the safety of the community.  The presumption imposes on Defendant a limited burden of production, not a burden of persuasion. *See United States v. Sacco*, No. 1:26-CR-31 (MAD), 2026 WL 1864473, at 6 (N.D.N.Y. June 29, 2026), quoting *United States v. Kelly*, No. 20-1720, 2020 WL  7019289, at 1 (2d Cir. Sept. 8, 2020) (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)).

If Defendant satisfies that burden, the presumption does not disappear.  It remains one factor among those the Court considers under § 3142(g). *See Sacco,* 2026 WL 1864473, at 6 (internal quotations and citations omitted). The Government nevertheless retains the ultimate burden of persuasion: clear and convincing evidence

- 7 -

as to danger and a preponderance of the evidence as to risk of nonappearance.  *See Id.* citing *United States v. Rodriguez,* 950 F.2d 85, 88 (2d Cir. 1991).

### III.   APPLICATION

The parties agree, and the Court finds, that a detention hearing is authorized under § 3142(f)(1) and that the rebuttable presumption under § 3142(e)(3) applies. The presumption applies because Count Two charges an offense listed in 18 U.S.C. § 2332b(g)(5)(B), as incorporated by § 3142(e)(3)(C).  The Court further finds, for the reasons detailed below, that Defendant has satisfied his limited burden of production. The presumption, therefore, remains a factor in the Court's analysis, while the Government retains the ultimate burden of proving dangerousness by clear and convincing evidence and risk of nonappearance by a preponderance of the evidence. To determine whether the Government has met its burden, the Court will address each of the 18 U.S.C. 3142(g) factors.

### 1.   The Nature and Circumstances of the Offenses

The nature of the charged offenses strongly favors detention.  Defendant is charged with offenses involving explosives and a destructive device, conduct expressly relevant under 18 U.S.C. § 3142(g)(1). The Government further represents that, if convicted, Defendant faces a mandatory minimum term of imprisonment of at least fifteen years. *See* Dkt. No. 21 at 2.

The alleged circumstances are also grave.  According to the Government's proffer, Defendant engaged in substantial planning, acquired components used to construct an improvised explosive device, and placed the device beneath a vehicle associated with the alleged victim. The Government further contends that the conduct

was motivated by an ongoing interpersonal dispute involving Defendant, the alleged victim, and a third person. *See* Dkt. No. 21 at 2; Dkt. No. 25 at 18-26.

Defendant does not dispute the seriousness of the charges but argues that the alleged conduct was an isolated incident and that no comparable violent conduct, additional explosive devices, or subsequent threats have been identified during the more than five years since the alleged offense. Defendant also relies on *United States v. Mattis*, 963 F.3d 285 (2d Cir. 2020), for the proposition that the seriousness of the charged conduct, standing alone, does not resolve the detention inquiry. *See* Dkt. No. 20 at 1, 2; Dkt. No. 25 at 34-36, 40-45.

The Court agrees that the seriousness of the charges is not dispositive and must be considered together with the remaining statutory factors. Nonetheless, given the alleged construction and use of an explosive device, the degree of planning described in the Government's proffer, and the targeted nature of the alleged conduct, this factor weighs strongly in favor of detention.

## 2.    The Weight of the Evidence

The weight of the evidence also favors detention. The Government proffered a substantial circumstantial case connecting Defendant to the construction and placement of the explosive device. That evidence includes merchant surveillance footage allegedly depicting Defendant purchasing components similar to those recovered from the explosive device; cell phone evidence, including photographs of the alleged victim's neighborhood; internet searches for explosive components and information about the alleged victim; residential surveillance allegedly showing Defendant's vehicle near the alleged victim's residence around the time of the alleged

incident; and statements to investigators that the Government characterizes as false or misleading. *See* Dkt. No. 21 at 4; Dkt. No. 25 at 21-23.

Considered together with the Government's proffer concerning Defendant's alleged motive, dkt. no. 25 at 56, this evidence presents a substantial circumstantial case of planning, preparation, execution, and concealment.  Defendant disputes aspects of the Government's interpretation of the evidence and the inferences the Government draws from it but principally relies on Defendant's history and characteristics to offset this factor.

The Court, therefore, finds that the weight of the evidence favors detention. That conclusion, however, does not resolve the ultimate question whether Defendant presently poses a danger that cannot be reasonably addressed through conditions of release. The Court considers that issue in conjunction with Defendant's history and characteristics and the nature and seriousness of the danger posed by release.

### 3.      Defendant's History and Characteristics

This factor weighs in favor of release.  Defendant is thirty-nine years old and has substantial ties to the community, stable employment, strong family support, and a record of military service that includes multiple commendations.  He also suffers from a serious medical condition and has a limited criminal history consisting of two prior driving-while-intoxicated convictions. *See* Dkt. No. 20 at 2; Pretrial Services Report, Dkt. No. 14 at 4, 5.

Most significant is Defendant's conduct during the more than five years following the alleged offense.  During that period, he remained in the community, maintained employment and housing, complied with state court release conditions,

committed no new offenses, and incurred no reported violations of supervision.  His state conditions were eventually reduced, and he was released on his own recognizance approximately seven months before the state charges were dismissed. *See* Dkt. Nos. 20-1, 20-2.

The Government argues that Defendant's compliance should be afforded limited weight because the state conditions were less restrictive than those now proposed and because the present federal prosecution exposes him to a mandatory minimum sentence that may increase the risk of dangerous conduct. *See* Dkt. No. 21 at 4.  The Court agrees that Defendant's present circumstances differ in material respects from those he faced during the state prosecution.

Even so, the Court finds Defendant's prior compliance highly probative. While on state release, Defendant faced attempted-murder and first-degree weapon charges and rejected a plea offer requiring a twelve-year term of imprisonment.  Despite that substantial exposure, he remained in the area, complied with supervision, and had no reported contact with the alleged victim or other law-enforcement involvement.  On balance, Defendant's history and characteristics weigh in favor of release.

4.      **The Nature and Seriousness of the Danger Posed by Release**

The alleged conduct, if proven, demonstrates a grave capacity for violence. According to the Government's proffer, Defendant spent months planning the offense, acquired components used to construct a sophisticated improvised explosive device, and placed that device beneath the alleged victim's vehicle with the intent to cause death or serious injury.  The Government argues that the conduct was deliberate rather than impulsive and that the interpersonal circumstances allegedly motivating the

offense are still present.  It further contends that Defendant's present federal exposure, including a mandatory minimum term of imprisonment, creates pressures that were not present to the same degree during the state prosecution. *See* Dkt. No. 21 at 4, 5; Dkt. No. 25 at 18-25.

The defense responds that the most reliable evidence of Defendant's present dangerousness is his conduct during the more than five years following the alleged offense.  During that period, Defendant remained in the community, complied with state supervision, committed no new offenses or acts of violence, engaged in no further bomb-making activity, made no reported threats, and incurred no reported violations of release conditions. The defense argues that this sustained period of lawful conduct supports the conclusion that the alleged offense was isolated rather than evidence of an ongoing course of dangerous conduct. *See* Dkt. No. 20 at 2; Dkt. No. 25 at 40.

The Court agrees that the alleged offense, if proven, reflects an extraordinary capacity for targeted violence and that the continued existence of the interpersonal relationship identified by the Government warrants serious concern.  The Court also recognizes that Defendant's present federal exposure materially changes his circumstances. Those considerations weigh in favor of detention.  However, the Defendant's danger to the community cannot be considered in isolation from the Court's ability to fashion conditions that directly address the identified risks and from the Court's assessment of whether Defendant will comply with those conditions. *See* *United States v. Corey*, No. 1:26-MJ-25 (DJS), 2026 WL 1810310, at 3 (N.D.N.Y. June 24, 2026).

The Government must establish by clear and convincing evidence that no condition or combination of conditions will reasonably assure safety of the community. On this record, the Court is not persuaded that it has met that burden. The more than five years that have elapsed since the alleged offense are significant because, unlike *United States v. Cole*, in which the court ordered detention following a comparable five-year delay, the Government has proffered no evidence of an intervening threat, act of violence, attempt to acquire explosive materials, effort to contact or surveil the alleged victim, or violation of supervision during that period. *See United States v. Cole*, No. 1:25-MJ-276, 2026 WL 17110, at 7 (D.D.C. Jan. 2, 2026) (suggesting that, absent evidence of comparable or otherwise dangerous conduct during the intervening five years, strict conditions of release might be appropriate). Defendant's compliance occurred while he faced serious state charges, and, after rejecting a plea offer carrying a twelve-year term of imprisonment, remained exposed to substantial incarceration.

The Court further finds that the specific conditions imposed, including home detention, GPS monitoring with geographic restrictions, third-party custodians, strict no-contact and stay-away provisions, restrictions on firearms, explosives, and other dangerous materials, mental-health treatment, substance abuse evaluation and treatment, and supervision by Pretrial Services, directly address the risks the Government identifies. Defendant's lengthy record of compliance, stable residence and employment, family support, and prior adherence to court orders provide a sufficient basis to conclude that he will comply with those conditions.

Accordingly, although the danger alleged is serious, the Government has not established by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community.

### IV.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED**, that the Government's Motion for detention is **DENIED,** and it is further

**ORDERED,** that Defendant shall remain released subject to the conditions set forth at Dkt. No. 26.

**SO ORDERED**.

Dated: August 7, 2026
      Albany, New York

_____
Paul J. Evangelista
U.S. Magistrate Judge